**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KLAUS ROSENSTERN, individually and as Executor of the Estate of JANET ROSENSTERN,<br><br>      Plaintiff,<br><br>      v.<br><br>ALLERGAN, INC., AND ALLERGAN USA, INC.,<br><br>      Defendants. | No. 13 C 4416<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Klaus Rosenstern ("Plaintiff"), individually and as Executor of the Estate of Janet Rosenstern, deceased ("Rosenstern"), brings this action against Allergan, Inc. and Allergan USA, Inc. ("Allergan"), manufacturers of the prescription drug Botox, alleging that Allergan caused Rosenstern's death by failing to warn of Botox's risks and negligently designing and marketing Botox, among other alleged violations of state law. R. 1-1. Plaintiff originally filed his complaint in the Circuit Court of Cook County, after which Allergan removed the case to this Court. R. 1. Allergan has moved to dismiss all counts pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 11. For the following reasons, Allergan's motion is granted as to Counts VI, VIII and IX, and denied as to Counts I, II, III, IV, V and VII.

## Background

The following facts, taken from the complaint, are accepted as true, and all reasonable inferences are drawn in Plaintiff's favor. *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013).

Botox is Allergan's name for Botulinum Type A, a potent neurotoxin. The federal Food and Drug Administration ("FDA") has approved certain therapies that involve injecting Botox into localized muscle areas to paralyze the muscle. R. 1-1 ¶¶ 13-14. One risk of Botox, however, is that it "can migrate outside the injected muscles and cause side effects including botulism and severe autoimmune reactions with resulting brain damage." *Id.* ¶ 14.

Plaintiff alleges that Allergan touted Botox as a "miracle drug" and "sponsored . . . conferences for doctors [at which Allergan] represent[ed] that Botox is 'well-tolerated,' 'safe,' and 'effective.'" *Id.* ¶ 15. Allergan "heavily promote[d] Botox for a wide variety of off-label uses including [Temporomandibular Joint Syndrome ("TMJ")]." *Id.* ¶ 16. Allergan created and funded several organizations to distribute electronic and printed promotional materials and to educate doctors about off-label uses for Botox. *Id.* ¶ 17. Allergan "specifically trained" its sales representatives to "refer doctors" to this promotional material and "encourage[d] off-label use by teaching injecting physicians and their staff how to get reimbursed for these non-approved uses by third-party payers." *Id.* According to Plaintiff, Allergan knew that this information was false, and Allergan distributed it with the intent of inducing physicians to prescribe Botox to treat off-label conditions. *Id.* ¶¶ 55-56. Allergan

2

recently pled guilty to off-label promotion in violation of the federal Food, Drug and Cosmetic Act, resulting in civil and criminal penalties. *Id.* ¶ 17.

Rosenstern's physicians recommended Botox treatment for her TMJ disorder. *Id.* ¶ 20. On May 25, 2011, Rosenstern received 75 units of Botox. *Id.* ¶¶ 3, 20. Rosenstern and her physicians decided to treat her TMJ with Botox in reliance on Allergan's representations that this was an appropriate use of Botox. *Id.* ¶ 57.

Plaintiff alleges that as "a consequence of Rosenstern's Botox treatment, she suffered from severe debilitating pain in her back and neck, muscle weakness, increased anxiety, depression and migraines." *Id.* ¶¶ 20, 22. The Botox also exacerbated Rosenstern's preexisting anxiety and depression. *Id.* ¶ 23. "Her condition eventually progressed into severe acute immune reaction, resulting in a[n] . . . injury to her brain, resulting in death" on April 23, 2013. *Id.* ¶¶ 21, 25. According to Allergan, the Sarasota, Florida Medical Examiner determined that Rosenstern's cause of death was suicide, R. 12 at 5, but Plaintiff alleges that Rosenstern's suicide was precipitated by her "Botox poisoning." R. 20 at 6.

The complaint includes nine substantive counts.[1] In Count I, Plaintiff alleges that "Allergan failed to warn Janet Rosenstern and others" and "her health care providers" that Botox could cause the harm Rosenstern suffered. R. 1-1 ¶¶ 27, 29. In Count II, Plaintiff alleges that the "Botox given to Janet Rosenstern contained a defect in its manufacture," *id.* ¶ 33, and that this defect caused Rosenstern's

---

[1] Rosenstern's complaint also includes three counts designating respondents in discovery pursuant to 735 ILCS § 5/2-402.

injuries. *Id.* ¶ 36. And in Count III, Plaintiff alleges that "Allergan was negligent in designing and marketing Botox," causing Rosenstern's injuries. *Id.* ¶ 38.

In Counts IV and V, Plaintiff alleges that Allergan breached implied and express warranties that Botox could safely be used to treat TMJ. *Id.* ¶¶ 16-17, 42, 49.

Count VI is captioned as a claim for "negligent misrepresentation." *Id.* at 13. Plaintiff alleges that Allergan made "false representations . . . to Janet Rosenstern, her health care providers, and the general public, . . . that Botox was safe, fit, and effective for human consumption." *Id.* ¶ 52. Plaintiff alleges that Allergan "willfully deceived Janet Rosenstern, her health care providers, and the general public as to the health risks and consequences of the use of Botox." *Id.* ¶ 53.

Count VII is a wrongful death claim brought by Plaintiff in his individual capacity. And in Count VIII, Plaintiff seeks to recover "certain sums of money for the funeral costs of the Decedent," in a "survival action." *Id.* ¶ 68.

Plaintiff has disavowed his claim for punitive damages in Count IX, R. 20 at 15, and, thus it is dismissed with prejudice.

## Legal Standard

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007). This "standard demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann*, 707 F.3d at 877 (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts as true all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

## Analysis

**Count I: Products Liability – Failure to Warn**

"To recover in a product liability action, a plaintiff must plead and prove that the injury resulted from a condition of the product, that the condition was an unreasonably dangerous one, and that the condition existed at the time the product left the manufacturer's control." *Sollami v. Eaton*, 772 N.E.2d 215, 219 (Ill. 2002). The "unreasonably dangerous" standard can be met through either "a physical flaw, a design defect, or a failure of the manufacturer to warn of the danger or instruct on the proper use of the product." *Id*. When proceeding under a failure to warn theory, a plaintiff must demonstrate that the manufacturer did not disclose an

5

unreasonably dangerous condition or instruct on the proper use of the product as to which the average consumer would not be aware. *Id.*

Allergan contends that Plaintiff's claim is barred by the learned intermediary doctrine, R. 12 at 4, which "excuses the manufacturer of a prescription drug from having to warn consumers of the drug's adverse side effects; it need warn only physicians, so that armed with the warning they can make a medical decision to prescribe or not to prescribe the drug for a particular patient." *Walton v. Bayer Corp.*, 643 F.3d 994, 999-1000 (7th Cir. 2011). But since Plaintiff has alleged that that Allergan failed to warn "Rosenstern *or her health care providers*" about the risks associated with Botox injections, R. 1-1 ¶ 29 (emphasis added), Allergan cannot seriously argue that the learned intermediary doctrine is applicable here. Allergan's real argument is that Rosenstern's reference to "health care providers" is not specific enough as to the physicians' identities. R. 12 at 5 n.1. But Plaintiff has named Dr. Steven Dayan and the True Skin Care Center as respondents in discovery who have "information regarding the Botox injection procedures which gave rise to the instant cause of action." R. 1-1 ¶¶ 74-83. This information is sufficient to give Allergan fair notice regarding the identity of Rosenstern's physicians.

Allergan also argues that Plaintiff fails to allege the following: what risks associated with Botox Allergan failed to warn Rosenstern's physicians about, R. 21 at 3; that "Allergan knew of the alleged risks of Botox at the time of production," or "injection," R. 12 at 5; R. 21 at 3; that "the alleged risks were not already known to

6

the prescribing physician or the medical community," R. 12 at 5; R. 21 at 3; that "the alleged risks were not in the package insert for Botox," R. 21 at 3; and, "that Allergan's alleged failure to warn . . . proximately caused Rosenstern's death" R. 12 at 5. Allergan's contentions are without merit because Plaintiff alleges that Botox "[c]an cause brain damage and severe autoimmune reactions" (among other alleged risks), R. 1-1 ¶ 27, that these risks "were known by Allergan . . . at the time Botox injured Janet Rosenstern," *id.*, and that "[i]f Allergan had informed Rosenstern or her health care providers of the known risks of Botox, they would have refused to use Botox." *Id.* ¶ 29. These allegations, along with the other allegations in the complaint, show that it is plausible that Allergan failed to warn Rosenstern and her physicians of the risk of using Botox to treat TMJ.

Allergan also contends that FDA regulations prevent it from providing warnings concerning off-label uses. R. 12 at 5; R. 21 at 4 n.1. This is simply not the case when Allergan is alleged to have promoted the off-label use in violation of federal law. *See Bausch v. Stryker Corp.*, 630 F.3d 546, 550-53 (7th Cir. 2010), *cert. denied*, 132 S. Ct. 498 (2011); *see also Allen v. ConAgra Foods, Inc.*, 2013 WL 4737421, at *8 (N.D. Cal. Sept. 3, 2013) ("The existence of the [Food, Drug, and Cosmetic Act] does not completely preclude injured parties from asserting claims of fraud or false advertising. Other legislation, state and federal remains in effect to protect consumers from false and deceptive prescription drug advertising."); *Ramirez v. Medtronic Inc.*, ___ F. Supp. 2d ___, 2013 WL 4446913, at *10 (D. Ariz. Aug. 21, 2013) (holding that "when [the manufacturer] allegedly violated federal

7

law by engaging in off-label promotion that damaged the Plaintiff . . . it departed the realm of federal regulation and returned to the area of traditional state law remedies"); *Wells v. Allergan, Inc.*, 2013 WL 389147, at *8 (W.D. Okla. Jan. 31, 2013) (holding that "[Allergan's] promotional activity [of off-label Botox uses] can be used as evidence in Plaintiffs' failure-to-warn claim").

Therefore, Allergan's motion to dismiss Count I is denied.

**Count II: Products Liability – Manufacturing Defect**

A "manufacturing defect occurs when one unit in a product line is defective." *Salerno v. Innovate Surveillance Tech., Inc.*, 932 N.E.2d 101, 108 (Ill. App. Ct. 1st Dist. 2010) (citing *Blue v. Envtl. Eng'g, Inc.*, 828 N.E.2d 1128, 1137 (Ill. 2005)). The plaintiff must also allege that the "condition [that] made the product unreasonably dangerous . . . results from manufacturing." *Salerno*, 932 N.E.2d at 108.

Allergan argues that Count II should be dismissed because it "does not contain any factual allegations regarding the particular manufacturing defect that may have been present in the Botox injected into Rosenstern, or how any such manufacturing defect may have caused or contributed to her alleged injuries and death." R. 12 at 6. Allergan pointedly asks, "What is the manufacturing defect? How was it defective? How did the alleged defect cause or contribute to Rosenstern's alleged injuries?" R. 21 at 5. But the Seventh Circuit has held that a plaintiff does not have to purport to answer these questions in order to state a claim for a defective product. *See Bausch*, 630 F.3d at 560. "Although the complaint would be stronger with such detail, . . . the absence of those details [does not] show[] a failure

8

to comply with Rule 8 of the Federal Rules of Civil Procedure." *Id.* In *Bausch*, The Seventh Circuit reminded district court judges that "much of the product-specific information about manufacturing needed to investigate [a defective manufacture] claim fully is kept confidential by federal law," and that "[f]ormal discovery is necessary before a plaintiff can fairly be expected to provide a detailed statement of the specific bases for her claim." *Id.* at 558.

Plaintiff alleges that the Botox given to Rosenstern "contained a defect in its nature" and that the defect "existed at the time Botox left the possession and control of Allergan." R. 1-1 ¶ 33. This defect "caused it to fail during the time of use" causing "Rosenstern to suffer injuries and damages." *Id.* ¶ 34. These allegations are sufficient to put Allergan on notice that Plaintiff claims that the Botox Rosenstern used was defectively manufactured. A "'plaintiff's pleading burden should be commensurate with the amount of information available to them.'" *Bausch*, 630 F.3d at 561 (quoting *In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liability Litig.*, 623 F.3d 1200, 1212 (8th Cir. 2010)). Plaintiff has met this burden with respect to Count II.

Therefore, Allergan's motion to dismiss Count II is denied.

**Count III: Negligence**

In order to state a claim for negligence under Illinois law, "'a plaintiff must plead a duty owed by a defendant to that plaintiff, a breach of duty, and injury proximately caused by the breach of duty.'" *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1148 (7th Cir. 2010) (quoting *Bell v. Hutsell*, 931 N.E.2d 299, 302 (Ill.

2010)). In Illinois, "'[a] product liability action asserting a claim based on negligence . . . falls within the framework of common law negligence.'" *Winters v. Fru-Con Inc.*, 498 F.3d 734, 746 (7th Cir. 2007) (quoting *Calles v. Scripto-Tokai Corp.*, 864 N.E.2d 249, 270 (Ill. 2007)).

Plaintiff alleges that Allergan breached its duty to Rosenstern as a user of Botox by "marketing and making available Botox to Janet Rosenstern even though it was [a] dangerous, defective, and deficient drug; and failing to provide Janet Rosenstern and [her] health care providers with sufficient information as to the product's known dangers and risks." R. 1-1 ¶ 38. Allergan argues that these allegations are insufficient because Plaintiff "provides no factual allegations concerning the 'marketing' Rosenstern is alleged to have seen," and "how Rosenstern purportedly relied on this 'marketing.'" R. 12 at 7.

Contrary to Allergan's contentions, the complaint contains a number of allegations regarding Allergan's Botox marketing practices, including creating and funding several organizations to distribute electronic and printed promotional materials and to educate doctors about the off-label uses for Botox. R. 1-1 ¶ 17. Plaintiff also alleges that Allergan "specifically train[ed]" its sales representatives to "refer doctors" to this promotional material, and "encourage[d] off-label use by teaching injecting physicians and their staff how to get reimbursed for these non-approved uses by third-party payers." *Id.* Additionally, Plaintiff has named Dr. Steven Dayan and the True Skin Care Center as respondents in discovery who have "information regarding the Botox injection procedures which gave rise to the instant

cause of action." *Id.* ¶¶ 74-83. These allegations taken together are sufficient to give Allergan fair notice regarding Plaintiff's negligent marketing claim.[2]

Count III also includes an allegation that "Allergan was negligent in designing Botox." R. 1-1 ¶ 39. Allergan argues that "to the extent Plaintiff seeks to pursue a negligence claim based on the drug's 'design,' the claim is conflict preempted because Allergan could not unilaterally alter the drug's design without running afoul of federal law." R. 12 at 7 n.4. As the Seventh Circuit has explained, however, "[i]f the problem turns out to be a design feature that the FDA approved," then this will protect the manufacturer. *Bausch*, 630 F.3d at 560. The claim must be allowed to proceed to determine whether "the problem turns out to be a failure to comply with the FDA's legally enforceable conditions for approval." *Id.*[3]

Therefore, Allergan's motion to dismiss Count III is denied.

---

[2] To the extent that Allergan argues that the learned intermediary doctrine bars Plaintiff's negligence claim, this argument fails for the reasons the Court discussed with respect to Count I. Additionally, to the extent that Allergan argues that Plaintiff cannot allege causation because the Sarasota Medical Examiner determined Rosenstern's cause of death to be suicide, R. 12 at 5, this argument fails because Plaintiff has alleged that Rosenstern's suicide was precipitated by her "Botox poisoning." R. 20 at 6. This allegation sufficiently alleges causation. *See Johnson v. Wal-Mart Stores, Inc.*, 588 F.3d 439, 442 (7th Cir. 2009) ("[S]uicide [is] foreseeable when the defendant's conduct caused an injury, most often to the head, that made the decedent so 'bereft of reason' as to cause him to attempt suicide." (quoting *Crumpton v. Walgreen Co.*, 871 N.E.2d 905, 911 (Ill. App. Ct. 1st Dist. 2007))).

[3] Allergan also contends that Count III should be dismissed because Plaintiff "provides no factual allegations as to how Botox's design is defective." R. 12 at 7. This argument fails for the reasons the Court discussed with respect to Count II.

**Count IV: Breach of Implied Warranty**

Under Illinois law, an implied warranty of fitness for a particular purpose requires that "the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." 810 ILCS 5/2-315; *S. Side Trust & Sav. Bank of Peoria v. Mitsubishi Heavy Indus., Ltd.*, 927 N.E.2d 179, 191 (Ill. App. Ct. 1st Dist. 2010). No warranty for a particular purpose is created if the intended use is no different from the ordinary use of the product. *See Wilson v. Massey-Ferguson, Inc.*, 315 N.E.2d 580, 582 (Ill. 1974).

Allergan argues that it "had no reason to know of the particular purpose for which Rosenstern was treated with Botox," and that "Plaintiff fails to adequately plead that Rosenstern relied on Allergan's skill and judgment (as opposed to her prescribing physician's)." R. 12 at 8. But Plaintiff alleges that Allergan promoted Botox for treatment of TMJ and that Rosenstern and her physicians decided to use Botox in reliance on Allergan's representations that this was an appropriate use. R. 1-1 ¶¶ 16, 20, 57. Thus, Allergan knew that Botox buyers might use it to treat TMJ, and this is sufficient to state a claim for breach of implied warranty.

In its reply, Allergan argues that Plaintiff has failed to state an implied warranty claim because "Allergan does not sell Botox directly to patients," rather the patient "rel[ies] on the prescribing physician's skill and judgment." R. 21 at 6-7. This argument amounts to an assertion that an implied warranty requires privity between a pharmaceutical manufacturer and a patient. But such privity is not

required when the plaintiff alleges "personal injury" as opposed to "economic losses." *Reid v. Unilever U.S., Inc.*, ___ F. Supp. 2d ___, 2013 WL 4050194, at *11 (N.D. Ill. Aug. 7, 2013); *see also Berry v. G.D. Searle & Co.*, 309 N.E.2d 550, 556 (Ill. 1974) ("[P]rivity is of no consequence when a buyer who purportedly has sustained personal injuries predicates recovery against a remote manufacturer for breach of an implied war[r]anty."). Plaintiff alleges that Rosenstern relied on both her doctors' judgment and Allergan's marketing, and those allegations are sufficient to state a claim for an implied warranty.

Therefore, Allergan's motion to dismiss Count IV is denied.

**Count V: Breach of Express Warranty**

In order to prevail on a claim for breach of express warranty, a plaintiff must plead and prove that the seller made an affirmation of fact that was part of the basis of the bargain between the parties. *Medline Indus., Inc. v. Ram Med., Inc.*, 892 F. Supp. 2d 957, 968 (N.D. Ill. 2012) (citing *Oggi Trattoria & Caffe, Ltd. v. Isuzu Motors Am., Inc.,* 865 N.E.2d 334, 340 (Ill. 2007)). "Since express warranties are contractual in nature, the language of the warranty itself is what controls and dictates the obligations and rights of the various parties." *Medline*, 892 F. Supp. 2d at 968 (citing *Oggi Trattoria,* 865 N.E.2d at 340).

Generally, a party must have privity of contract in order to bring a cause of action for breach of express warranty. *Canadian Pac. Ry. Co. v. Williams-Hayward Protective Coatings,* 2005 WL 782698, at *15 (N.D. Ill. Apr. 6, 2005) (applying Illinois law). The exception to this rule is if a manufacturer "expressly warranted its

goods to the ultimate consumers and this was the basis for the bargain and relied upon by plaintiffs." *In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953, 957 (N.D. Ill. 2007). "In the context of a buyer purchasing a product from a dealer and not the manufacturer, Illinois courts have concluded that brochures, documents, and advertisements may be the basis of express warranty." *Canadian Pac. Ry. Co.*, 2005 WL 782698, at *15. "In other words, manufacturer documents given directly to the buyer prior to a purchase may give rise to an express warranty because the assertions become part of the basis of the bargain unless clear affirmative proof shows otherwise." *Id*.

Invoking this exception to the privity requirement, Plaintiff alleges that Allergan's express warranties were made to "the public and Janet Rosenstern through her physicians . . . through its advertising and marketing." R. 1-1 ¶ 49. Specifically, Allergan made statements that Botox is "well-tolerated," "safe," and "fit" to treat TMJ through conventions for medical professionals, package inserts, promotional and "other written, oral, and electronically disseminated statements and materials provided to the medical trade journals and to mass-market publications." R. 1-1 ¶ 49.

Allergan contends that Plaintiff cannot rely on this exception to the privity requirement, because despite Plaintiff's allegations of mass-market promotions, Plaintiff fails to allege that Rosenstern actually attended the conventions Allergan allegedly sponsored or actually read the materials Allergan allegedly disseminated. R. 21 at 8. At this stage of the litigation, however, Plaintiff is not required to

14

specifically identify what promotional materials Rosenstern or her doctors relied on. It is enough for Plaintiff to describe Allergan's promotional activities and allege that Rosenstern and her doctors relied on this information. These allegations make Allergan's liability plausible.[4]

Therefore, Allergan's motion to dismiss Count V is denied.

**Count VI: Negligent Misrepresentation**

Although Plaintiff has captioned Count VI as a claim for negligent misrepresentation, Allergan argues that Plaintiff has actually alleged a claim for fraudulent representation that is subject to the heightened pleadings standards of Federal Rule of Civil Procedure 9(b). R. 12 at 10.

To state a claim for negligent misrepresentation, "a party must allege: '(1) a false statement of material fact; (2) *carelessness or negligence in ascertaining the truth of the statement* by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; (5) damage to the other party resulting from such reliance; and (6) a duty on the party making the statement to communicate accurate information.'" *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833-34 (7th Cir. 2007) (quoting *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 843 N.E.2d 327, 334-35 (Ill. 2006)) (emphasis added). By contrast, the "elements of a cause of action for fraudulent misrepresentation are: (1) a false statement of material fact; (2) *known*

---

[4] Allergan is also incorrect that Plaintiff fails to allege "what Allergan expressly warranted" or "that any express warranty . . . was relied on by Rosenstern." R. 12 at 10. Plaintiff alleges that Allergan warranted that Botox was safe to use to treat TMJ and that Rosenstern and her doctors relied on this assurance. R. 1-1 ¶ 57.

15

*or believed to be false* by the party making it; (3) intent to induce the other party to act; (4) action by the other party in justifiable reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance." *JF Enters., LLC v. Fifth Third Bank*, 824 F. Supp. 2d 818, 823 (N.D. Ill. 2011) (applying Illinois law) (emphasis added).

Here, Plaintiff does *not* allege that Allergan acted with "carelessness or negligence in ascertaining the truth" of its statements regarding the safety of Botox, but rather that Allergan *knowingly* made false statements. R. 1-1 ¶ 53. In particular, Plaintiff's allegations include an assertion that Allergan "knowing[ly]" made false representations, "conceal[ed]" material information pertaining to the risks of Botox from users and physicians, and "purposely" downplayed the risks of Botox. *Id.* Thus, Count VI sounds in fraud and is, therefore, subject to the heightened pleading standard of Rule 9(b). *See Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (holding that the applicability of Rule 9(b)'s heightened pleading standard turns not on the title of the claim but on whether the underlying facts alleged in the complaint "sound in fraud").

Rule 9(b) requires that a party "state with particularity the circumstances constituting fraud or mistake," meaning that "facts such as the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff must be alleged in detail." *Hefferman v. Bass,* 467 F.3d 596, 601 (7th Cir. 2006). Plaintiff has alleged in general terms that Allergan

16

promoted Botox as a safe treatment for TMJ, even though Allergan knew that it was not safe and that Rosenstern and her doctors relied on Allergan's promotional materials in deciding to use Botox to treat Rosenstern's TMJ. But Plaintiff's general allegations are insufficient to meet the heightened standard of Rule 9(b). Plaintiff has not alleged with particularity what promotional materials contained false statements, the specific content of those false statements, what individuals made those statements to Rosenstern or her doctors, and when and where those statements occurred.

Therefore, Allergan's motion to dismiss Count VI is granted because it alleges fraud rather than negligence, and does not state with particularity the circumstances constituting fraud. The dismissal is without prejudice should Plaintiff seek to refile with the required particularity.

**Counts VII: Wrongful Death**

Allergan contends that Plaintiff cannot maintain a wrongful death action because a "wrongful death action requires that the deceased had a viable action for wrongful injury at the time of death," but "the Complaint states no viable cause of action for wrongful injury." R. 12 at 13 (citing *Wolf v. Bueser*, 664 N.E.2d 197, 201 (Ill. App. Ct. 1st Dist. 1996)). The Court, however, has held that Plaintiff has stated claims for failure to warn (Count I), defective manufacture (Count II), negligence (Count III), breach of an implied warranty (Count IV), and breach of an express warranty (Count V); thus, Plaintiff can maintain a wrongful death action.

Therefore, Allergan's motion to dismiss Count VII is denied.

**Count VIII: Survival Act**

Plaintiff captions Count VIII as a "Survival Action" and alleges that he can recover money for the costs of Rosenstern's funeral "pursuant to common law." But the "Survival Act does not create a statutory cause of action. It merely allows a representative of the decedent to maintain those statutory or common law actions which had already accrued to the decedent before he died." *Advincula v. United Blood Servs.*, 678 N.E.2d 1009, 1029 (Ill. 1996). As the costs of Rosenstern's funeral had not accrued before she died, the Survival Act does not provide a basis for Plaintiff to bring a claim for those costs. *See* 755 ILCS 5/27-6. Plaintiff does not cite any other authority permitting him to recover funeral expenses.

Therefore, Allergan's motion to dismiss Count VIII is granted.

**Count IX: Punitive Damages**

As Plaintiff has disavowed his claim for punitive damages, R. 20 at 15, Allergan's motion to dismiss Count IX is granted and Count IX is dismissed with prejudice.

## Conclusion

For the foregoing reasons, Allergan's motion to dismiss is denied with respect to Counts I, II, III, IV, V and VII; Allergan's motion to dismiss is granted with respect to Counts VI, VIII and IX; and Counts VI and VIII are dismissed without prejudice and Count IX is dismissed with prejudice.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: October 25, 2013